UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CLOVER BROWN** | : |
| PLAINTIFF | : |
| | : |
| v. | |
| | : |
| **SOUTHWEST AIRLINES CO.;** | : |
| **JANE DOE;** | |
| **JOHN DOE;** | |
| | |
| DEFENDANT | : |

# COMPLAINT

**NATURE OF ACTION**

The Plaintiff, Clover Brown, by and through her attorney, Jamaal T. Johnson, Esq., of the law office of JT Johnson, LLC brings this action against Southwest Airlines Co., John Doe and Jane Doe alleges as follows:

**JURISDICTION AND PARTIES**

1. The Plaintiff, Clover Brown, is an individual residing in Windsor, Connecticut.

2. The Defendant, Southwest Airlines Co. ("Southwest"), is a corporation organized under the laws of the State of Texas, with its principal place of business located at 2702 Love Field Drive, Dallas, Texas 75235, and is authorized to conduct business within the State of Connecticut.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because:

    (a) Plaintiff is a citizen of Connecticut;

    (b) Defendant is a citizen of Texas and not a citizen of Connecticut;

1

    (c) No Plaintiff is a resident of the same state as any Defendant; and

    (d) The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant because Southwest has sufficient minimum contacts, ties, and relations with the State of Connecticut, including but not limited to:

    (a) Operating commercial passenger flights into and out of Connecticut;

    (b) Conducting business and deriving substantial revenue from Connecticut residents;

    (c) Selling airline tickets directly to Connecticut consumers via the internet and other means;

    (d) Engaging in continuous and systematic business activity within this judicial district.

Accordingly, Defendant has purposefully availed itself of the privilege of conducting business in Connecticut, making the exercise of personal jurisdiction consistent with due process and applicable federal law, including *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

5. At all relevant times, Southwest Airlines Co. functioned as a commercial air carrier and common carrier, thereby owing its passengers — including Plaintiff — a heightened duty of care under both federal aviation regulations (FAA/FAR) and Connecticut law.

**FACTUAL ALLEGATIONS**

6. On November 20, 2023, the Plaintiff, a fare-paying passenger, boarded Southwest Airlines Flight 270 at Midway International Airport in Chicago, Illinois, bound for Connecticut.

7. While preparing to depart the gate and seated on the right-hand side of the plane, the Plaintiff observed a Southwest ground support pushback tug, attached to the aircraft by a tow bar, collide with the aircraft, causing a violent jolt and puncturing one or more tires, placing all passengers in danger.

8. The pushback tug and its operator were employees, agents, contractors, and/or servants of Southwest Airlines Co., acting within the scope of their employment at all relevant times. All John Doe and Jane Doe defendants were under the direction and control of Southwest Airlines Co.

9. Following the initial collision, the pilot announced over the intercom that an accident had occurred and that the aircraft could not legally depart until a supervisor arrived to take an official accident report, further confirming the severity of the incident.

10. As the aircraft remained on the tarmac, the Plaintiff smelled fumes consistent with carbon monoxide and began to experience chest pain, difficulty breathing, dizziness, nausea, and respiratory distress.

11. The Plaintiff pressed the call button and reported her symptoms to the flight attendant, who confirmed the odor. However, no immediate medical assistance, oxygen mask, or evacuation procedures were provided at that time.

12. Despite the prior impact, the pushback tug attempted to reverse the aircraft a second time, resulting in another violent jolt, increasing the Plaintiff's symptoms, and causing additional fear, physical strain, and emotional distress.

13. Southwest employees failed to timely and properly respond to the Plaintiff's medical distress, despite clear signs of respiratory difficulty and obvious potential exposure to hazardous fumes.
14. Emergency personnel eventually boarded the plane and removed the Plaintiff for medical evaluation. During transport from the aircraft, the Plaintiff was exposed to freezing rain and cold temperatures, exacerbating her physical condition.
15. The Plaintiff was taken by ambulance to the hospital, where she was diagnosed with carbon monoxide poisoning and treated for respiratory distress, chest pain, and exposure to hazardous substances. She remained under medical observation for several hours.
16. The Plaintiff's husband attempted to contact Southwest Airlines to report the incident, but no representative was available, and they were instructed to wait until the following morning.
17. The following day, a Southwest employee finally took the report, but no immediate investigation, warning to other passengers, or safety assurance was given.
18. Southwest Airlines Co. failed to maintain safe premises, failed to properly monitor its equipment, failed to warn passengers of known hazards, and failed to exercise the heightened duty of care owed to passengers as a common carrier.
19. The tug vehicle, tow bar, and/or related equipment used to maneuver the aircraft were defective, poorly maintained, or improperly operated, giving rise to claims for negligence, failure to warn, and products liability.
20. Southwest failed to screen, train, supervise, or monitor the ground personnel involved in the handling of the aircraft, thereby constituting negligent hiring, negligent supervision, and negligent training.

21. The conduct of Southwest's ground crew and flight personnel constituted negligence, recklessness, and/or negligence per se for violation of applicable FAA and federal safety regulations governing ground operations and passenger safety.

22. The Plaintiff suffered physical injuries, carbon monoxide poisoning, emotional distress, pain and suffering, medical expenses, loss of enjoyment of life, and other damages to be proven at trial.

**CAUSES OF ACTION (BY COUNT)**

**COUNT ONE – NEGLIGENCE**

36. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

37. Defendant owed Plaintiff a duty of care as a fare-paying passenger aboard a Southwest Airlines flight.

38. Defendant breached that duty of care by, including but not limited to:

    a. Failing to properly inspect, maintain, and operate the pushback tug and tow bar;

    b. Permitting ground crew operations that caused a collision with the aircraft;

    c. Allowing carbon monoxide and toxic fumes to enter the passenger cabin;

    d. Failing to promptly evacuate passengers after the collision;

    e. Failing to provide timely and adequate medical assistance to Plaintiff;

    f. Failing to comply with industry and regulatory safety standards.

39. As a direct and proximate result, Plaintiff suffered physical injury, respiratory distress, carbon monoxide poisoning, chest pain, emotional trauma, medical expenses, and other damages to be proven at trial.

## COUNT TWO – PREMISES LIABILITY

40. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

41. Defendant maintained and controlled the aircraft, gate area, and surrounding premises at Midway Airport.

42. Defendant created and/or allowed hazardous conditions on said premises, including unsafe ground operations, defective pushback equipment, and the release of toxic fumes.

43. Defendant failed to warn or protect Plaintiff from foreseeable and dangerous conditions.

44. As a result, Plaintiff suffered injuries and damages as stated herein.

## COUNT THREE – NEGLIGENT HIRING, TRAINING, AND SUPERVISION

45. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

46. Defendants failed to adequately vet, train, supervise, and monitor its employees, agents, contractors, and ground personnel—including pushback tug operators, flight crew, and safety personnel.

47. Such failures directly contributed to the collision, exposure to hazardous substances, delayed emergency response, and the resulting harm suffered by Plaintiff.

48. Defendant's failure to employ properly trained and competent personnel constitutes negligence under Connecticut and federal law.

## COUNT FOUR – VICARIOUS LIABILITY (RESPONDEAT SUPERIOR)

49. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

50. All John & Jane Doe individuals involved in the pushback, tug operation, response, and post-incident handling were employees, agents, and/or servants of Defendant and acted within the scope of their employment.

51. Defendant is vicariously liable for the negligent, reckless, and wrongful acts of its personnel under the doctrine of respondeat superior.

**COUNT FIVE – FAILURE TO PROVIDE MEDICAL ASSISTANCE**

52. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

53. Defendant failed to timely assess Plaintiff's breathing difficulties, failed to provide an oxygen mask or medical equipment, and delayed emergency evacuation despite clear knowledge of respiratory distress.

54. Defendant's delay and failure to render aid exacerbated Plaintiff's injuries, constituting negligence under Connecticut common law and federal aviation standards.

**COUNT SIX – NEGLIGENCE PER SE**

55. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

56. Defendant violated multiple federal and state regulations, including FAA rules governing ground operations, aircraft movement, passenger safety, and exposure prevention.

57. Said violations were enacted to protect passengers such as Plaintiff. Defendant's actions constitute negligence per se, rendering them automatically liable for resulting damages.

**COUNT SEVEN – BREACH OF FAA STANDARDS**

58. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

59. Defendant failed to comply with FAA safety regulations concerning pushback procedures, equipment maintenance, prevention of toxic exposure, and emergency response.

60. Such failures directly resulted in the collision, fumes entering the cabin, and unsafe transport of passengers, causing Plaintiff's injuries.

**COUNT EIGHT – COMMON CARRIER HEIGHTENED DUTY OF CARE**

61. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

62. As a common carrier, Defendant owed Plaintiff the highest degree of care for her safety pursuant to federal law and controlling common law.

63. Defendant breached this heightened duty by exposing Plaintiff to hazardous conditions, failing to warn her of risk, and failing to provide proper care during and after the incident.

64. This breach directly caused Plaintiff's injuries and resulting damages.

**COUNT NINE – ASSAULT AND BATTERY**

65. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

66. The sudden and violent collision—caused by Defendant's employees—constituted unconsented and harmful physical contact with Plaintiff, reasonably causing fear and bodily injury.

67. The reckless operation of the tug, which physically impacted the aircraft and impacted Plaintiff, constitutes assault and battery under applicable law.

**COUNT TEN – PRODUCTS LIABILITY**

68. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

69. The pushback tug, tow bar, and related ground equipment were defective and/or malfunctioning when used in their intended manner.

70. Defendant placed said equipment into use without adequate inspection or safety measures, rendering Defendant strictly liable under products liability principles.

71. The defective equipment was a direct and proximate cause of Plaintiff's injury.

**COUNT ELEVEN – FAILURE TO WARN**

72. Plaintiff repeats and realleges paragraphs 1–35 as though fully set forth herein.

73. Defendant knew or should have known of risks including:

    a. Danger of collision during tug operations;

    b. Potential emission of toxic fumes;

    c. Risk of carbon monoxide exposure; and

    d. Increased risk of medical complications when delaying evacuation.

74. Defendant failed to warn Plaintiff and passengers of foreseeable and known hazards, thereby breaching its duty to protect passengers.

75. As a direct result, Plaintiff suffered the physical and mental injuries described herein.

**DAMAGES**

36.  As a direct and proximate result of the Defendant's negligent, reckless, and careless conduct, and that of its employees, agents, and/or servants, the Plaintiff sustained serious injuries and losses, including but not limited to the following:

a. Carbon monoxide poisoning and exposure to hazardous substances while on board the aircraft;

b. Respiratory distress, dizziness, and significant difficulty breathing, requiring emergency medical intervention;

c. Chest pain and physical injuries resulting from both carbon monoxide exposure and the violent jolt caused by the collision between the aircraft and the pushback tug;

d. Emotional distress, mental anguish, anxiety, and psychological trauma, including fear for personal safety and worsening of symptoms during the evacuation and transport to the hospital in freezing rain;

e. Exposure to harsh and unsafe weather conditions, including freezing rain during the emergency removal from the aircraft;

f. Medical expenses, including emergency treatment, diagnostic testing, monitoring, medication, and follow-up care;

g. Future medical care and treatment, including ongoing evaluation for respiratory conditions, carbon monoxide effects, and emotional/psychological trauma;

h. Lost wages and loss of earning capacity, caused by the need for treatment and recovery from injuries;

i. Loss of enjoyment of life and diminished quality of life due to ongoing physical and emotional symptoms;

j. Pain and suffering, both past and continuing;

k. Any and all other damages to be proven at trial, including punitive damages if permitted by law.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**CLOVER BROWN**                          :
PLAINTIFF                                 :
                                          :
v.

                                          :
**SOUTHWEST AIRLINES CO.;**               :
**JANE DOE;**
**JOHN DOE;**

DEFENDANT                                 :

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, CLOVER BROWN, respectfully demands judgment against the Defendant, SOUTHWEST AIRLINES CO., and requests the following relief:

1. Compensatory damages in an amount sufficient to fairly and justly compensate Plaintiff for her injuries, losses, and damages, including but not limited to medical expenses, future medical care, lost wages, loss of earning capacity, emotional distress, pain and suffering, and loss of enjoyment of life;

2. Economic and non-economic damages as permitted under applicable law;

3. Punitive damages, to the extent permitted by law, for Defendant's reckless disregard for the safety and well-being of the Plaintiff and the public;

4. Statutory damages and/or treble damages, if applicable;

5. Pre-judgment and post-judgment interest as allowed by law;

6. Costs of this action, including reasonable attorneys' fees where permitted;

11

7. Any and all equitable relief deemed just, proper, and necessary by this Court; and

8. Any further relief that the Court deems fair and just.

        Respectfully submitted,
BY */s/ Jamaal T. Johnson, Esq.*
Jamaal T. Johnson, Esq.
The Law Office of J.T. Johnson, L.L.C.
1229 Albany Ave., Suite 301,
Hartford, CT 06112
(p) 860-278-1000 | (f) 860-278-1002
Federal Bar # CT-29701 | Juris #: 432872
Email:jamaaltjohnson83@gmail.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CLOVER BROWN** | : |
| PLAINTIFF | : |
| | : |
| v. | |
| | : |
| **SOUTHWEST AIRLINES CO.;** | : |
| **JANE DOE;** | |
| **JOHN DOE;** | |
| DEFENDANT | : |

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and any other applicable authority,

Plaintiff hereby demands trial by jury on all issues so triable as of right.

Respectfully submitted,
BY /s/ Jamaal T. Johnson, Esq.
Jamaal T. Johnson, Esq.
The Law Office of J.T. Johnson, L.L.C.
1229 Albany Ave., Suite 301,
Hartford, CT 06112
(p) 860-278-1000 | (f) 860-278-1002
Federal Bar # CT-29701 | Juris #: 432872
Email:jamaaltjohnson83@gmail.com